Bernard -S. Meyer, J.
This declaratory judgment action illustrates one of the profound yet subtle changes wrought in the law of zoning by the Court of Appeals’ decision in Matter of Fulling v. Palumbo (21 N Y 2d 30). Though “ Legislative enactments are presumed to be constitutional * * # [and] unconstitutionality must be demonstrated beyond a reasonable doubt ” (Wiggins v. Town of Somers, 4 N Y 2d 215, 218), the showing by a property owner that he will suffer “ significant economic injury ” (21 N Y 2d 33) or “ severe financial loss ” (21 N Y 2d 34) by the application of an area standard ordinance is, under the Fulling decision, “ sufficient to entitle him to relief” (21 N Y 2d 34), unless the municipality comes forward with proof that the standard is justified because ‘ ‘ the public health, safety and welfare will be served by upholding the application of the standard ” (21 N Y 2d 33) and it is not until such a showing has been made that the property owner ‘ ‘ must demonstrate that the hardship caused [by application] * * * amounts to a taking of his property ” (21 N Y 2d 35). Thus, the presumption that the zoning ordinance is ‘ ‘ supported by facts known to the [legislative body] ” (Wiggins v. Town of Somers, supra, p. 218) is not to be indulged in the face of evidence of such injury or loss, or, to put the matter another way, while the burden of proving unconstitutionality beyond a reasonable doubt remains on the property owner throughout the case, evidence of such injury or loss shifts to the municipality the burden of going forward with proof that the area restriction bears reasonable relationship to health, welfare or safety and, absent such proof, the property owner is entitled to judgment without regard to whether application of the ordinance to the particular property is confiscatory.
If the foregoing interpretation of the Fulling decision is accepted, and the language of the opinion does not appear to admit of any other, plaintiff must succeed in this action. The complaint sets forth two causes of action, both of which allege that the ordinance as it affects plaintiff’s property bears no reasonable relationship to health, safety or general welfare, destroys the greater part of the value of the property and is confiscatory. The only material difference between the two causes of action is that the second, as amended, alleges and the town admits that application was made for a variance to build *729 a one-family dwelling on the property and was denied by the Board of Zoning Appeals.
The property is located in Garden City South at the corner of Seventh Street and Euston Road, fronting 40 feet on Seventh Street and running to a depth of 100 feet on Euston Road. It is located in a Residence B District, and was acquired by plaintiff’s grantor from Samuel and Hattie Holden by deed dated January 30, 1958. On and for some time prior to October 25, 1957, the Holdens also owned the 40 by 100-foot parcel adjoining the subject property to the west, on which they had erected a one-family residence, and which on January 30, 1958, they conveyed to George Deninger and wife. The two parcels were acquired separately by the Holdens prior to 1951, when the Building Zone Ordinance of the town required for the erection of a one-family dwelling only a plot of 4,000 square feet with minimum frontage of 40 feet. In 1951, the ordinance was amended to require area of 6,000 square feet and frontage of 55 feet, except that a 4,000 square-foot plot was sufficient if applicant owned no other contiguous land. In 1957 the exception was re-enacted (see Matter of Cabral v. Young, 14 Misc 2d 550) to provide that the maximum width, area and frontage requirements did not apply to property having area of at least 4,000 square feet if it was in separate' ownership from any adjoining land on October 25,1957 and did not come into common ownership with adjoining land at any time thereafter. Since the two parcels here involved were in the Holden’s common ownership from 1950 until January 30, 1958, the exception does not apply, and the ordinance proscribes erection of a dwelling on the subject property.
The Fulling opinion draws no distinction between “ significant economic injury ” and “ severe financial loss ”, though the phrases do not necessarily connote the same thing. It is not necessary to choose between them, however, for the evidence demonstrates both. Plaintiff’s expert fixed the difference between the value of the subject property as a buildable plot and its value as an adjunct to the adjoining plot at $10,500; defendant’s expert fixed that difference at $7,000, but admitted that his $3,000 adjunct value was a guess. Since the court finds that the property cannot be used for nursery purpose and, if a dwelling cannot be built upon it, has no use except as an adjunct to the adjoining plot, it concludes that defendant’s expert’s “guess” is unrealistic. Rather, it finds that the adjunct value of the plot is not over $1,500. Whichever adjunct value is used, however, the value of the property as a buildable plot is reduced by between 70% and 87%% by application *730 of the ordinance, which is clearly a significant economic injury. If, on the other hand, “ severe financial loss ” is construed to mean a monetary rather than an economic (paper) loss, there is a loss of approximately 60% in this case. To the cost of the property of $2,500 must be added interest on that sum for a period of 10 years and taxes paid during a like period. While there is no proof concerning taxes paid, the court can take judicial notice of the fact that during the 10-year period the interest rate has never been lower than 4%. It is, therefore, a reasonable inference that interest and taxes have increased the investment in the property by at least 50%, to a total of $3,750, and since its present value is not over $1,500, there is, in terms of the investment in the property, if not in absolute terms, a ‘ ‘ severe financial loss ’ ’.
Against that showing, the town introduced no proof that the public health, safety and welfare would be served in any way by application of the restriction. No evidence was presented that fire, police, sewerage, garbage or any other governmental service may be overburdened by the erection of a dwelling on plaintiff’s property (see Riviere v. Town of Hempstead, 40 Misc 2d 152, 154). Aside from countervailing proof concerning the value of plaintiff’s property, the only other evidence offered by the town was its expert’s opinion that erection of a one-family house on plaintiff’s property would adversely affect adjoining properties to a distance of four or five houses. However, the court gives little weight to that opinion because the evidence shows that of the five houses to the north, three are on 40 by 100 plots, one on a plot 43 by 100 and only one on a 60 by 100 plot; of the four parcels to the east, two are zoned for business, and three occupied by residences are 43 by 100, 45 by 100, 55 by 100 in size, while the fourth, a plot 58 by 100, is occupied by a store; of the five parcels to the south, one is-40 by 100, two are 46 by 100, one is 47 by 100 and one is 54 by 100; of the five parcels to the west, one is 40 by 100, one 45 by 100, one 55 by 100 and two 60 by 100, and the value of the house on the 40 by 100 (the parcel adjoining plaintiff’s which was sold by the Holdens to the Deningers in 1958) increased from $17,500 in 1958 to $22,500 in 1966 notwithstanding the other substandard plots in the area. Moreover, while Matter of Fulling (supra, p. 34) referred only to lots “ immediately surrounding the lot in question”, and no case has yet defined the area that must be taken into consideration, the court finds that of the 106 separate parcels of land within a 400-foot radius of the subject property as shown on Exhibit 6, only 19 are 60 by 100 or larger, of which 8 are in a part of the *731 area zoned for business, and of those eight, four are occupied by stores, offices or a plant nursery. Sixty-seven of the remaining 87 are on plots of 40 by 100 up to 48 by 100 in area, and 17 more are on plots of 50 by 100 up to 55 by 100 in area. Since the Fulling case held that variance of a 12,000-foot restriction which complied with by only 20 out of 83 improved lots in the area would not affect the character of the immediate area, the same conclusion must be reached in the instant case, where only 19 out of 106 plots comply, especially since substandard portions of the immediate area in the instant case are zoned not Residence B but either Residence C (one- or two-family houses) or Business.
It follows that plaintiff is entitled to judgment declaring the ordinance unconstitutional as applied to plaintiff’s property because as to that property, it bears no reasonable relationship to health, safety or general welfare.