John H. Galloway, Jr., J.
Petitioners bring this proceeding pursuant to article 78 of the CPLR to review and annul a determination of the respondent Zoning Board of Appeals of the Village of Pleasantville (hereinafter called the Board) which denied petitioners’ application for an area variance, and for judgment directing the respondents to grant their application, on the grounds that the Board’s action was illegal, unconstitutional, arbitrary, capricious, improper and an abuse of its discretion, thus imposing upon petitioners practical difficulties and unnecessary hardship and severe economic loss. Respondents interposed denials of the material allegations of the petition and a defense that the petition is insufficient in law upon the face thereof.
Involved in this proceeding are 5 lots located in the Village of Pleasantville and designated on the tax map as 'Section 3, Block 39, Lots 7, 8, 9,10 and 11, which together form a parcel of land *1096 having an area of approximately 12,753 square feet. Lots 7, 8 and 9, for which the area variance is requested, are a corner parcel having an area of 7,753 square feet, which at the time of its purchase by petitioners in 1939 was improved with a two-family dwelling having a frontage of 57.25 feet on King Street, a depth on its westerly side of 100 feet, rear width of 97.81 feet, and a frontage on William Street of 107.92 feet, which petitioners acquired as an investment and have leased as income property up to the present time. At the time of acquisition of said parcel, it conformed to the lot area provisions of the then existing zoning ordinance of the village for two-family dwellings. Lots 10 and 11 have a frontage of 50 feet on King Street and a depth of 100 feet, forming a parcel of 5,000 square feet, contiguous to the easterly line of the Parcel-lots 7, 8 and 9. Lots 10 and 11 are vacant land and were purchased by petitioners in 1943 for investment purposes. Said parcel was and still remains suitable for a one-family dwelling under the existing, zoning ordinance at the time of the application here involved.
In 1964, the Village Zoning Ordinance was amended to require a minimum lot area of 10,000 square feet for two-family dwellings, as a result of which the Parcel-lots 7, 8 and 9 were made substandard for such use. However, the 1964 amendment did not affect the lot area limitation for Lots 10 and 11, upon which a one-family dwelling remained and continues to be a permitted use thereon, if, according to the Board, the two lots had not been merged into a single ownership with Lots 7, 8 and 9 prior to the 1964 amendment.
In these circumstances, petitioners applied to the Board for an area variance of 2,247 square feet to be applied to Lots 7, 8 and 9, and for permission to érect a one-family dwelling on Lots 10 and 11, or for permission to sell said lots as a fully conforming parcel. Petitioners argued before the Board that, although Lots 7, 8 and 9 would thereby be made a nonconforming parcel under the amended ordinance, nevertheless the reduced area would not be less than that originally required when the property was first acquired.
Petitioners urge in support of their application that the two parcels were acquired separately for investment purposes prior to the 1964 amendment of the ordinance, and that they would suffer a severe financial loss if Lots 10 and 11 could not now be sold as a separate parcel. At the hearings before the Board, petitioners’ real estate expert testified, without contradiction, that if Lots 10 and 11 could not be sold separately a loss of $5,000 would result, in that the two parcels sold separately are worth $39,500, but if sold together are worth only $34,500. One *1097 of the petitioners testified that he had been offered $32,000 for the five lots including the two-family dwelling, and that he had been offered $7,500 for Lots 10 and 11, providing the variance requested is obtained. There was also testimony at the hearings that the immediate neighborhood is well developed with numerous two-family homes on undersized lots, including a two-family house on a 50 feet by 100 feet parcel contiguous to Lot 11 on the east.
In denying the application by a vote of 3 to 1, the Board stated that, if with its approval Lots 10 and 11 were subdivided from Lots 7, 8 and 9, Lots 10 and 11 would meet the R-2 district’s area and width requirements for a one-family house to be constructed thereon without need of a variance; but that Lots 7, 8 and 9 would thereby lack 2,247 of the 10,000 square feet required to continue the two-family house and the building thereon; that to grant the requested variance the Board would be authorizing a reduction of nearly 23% in the area requirements for said parcel.
The Board observed that the petitioners’ application for the area variance was based simply upon their claim of a financial loss of $5,000 if the five lots had to be sold as one parcel, rather than in two parcels. It said that to grant a variance so disproportionately large in the area involved would be to fly in the face of the legislative intent of the Village Board, clearly stated at the time of the 1964 amendment of the ordinance, that the area in question be up-zoned as to use, area and setbacks. The Board concluded as follows:
“ but if a possible increased profit is to be the sole criterion for granting the variance to this applicant who wishes to use the property in a manner which does not conform to the master plan of the Village as set forth in the Zoning Ordinance, then there is little or no purpose in zoning. The Board is of the opinion that since there are no unusual circumstances and no hardship, as such is contemplated by the Zoning Ordinance, the granting of such an extensive variance would be de facto legislation and an excessive use of the Board’s discretionary powers.
1 ‘ If the variance were granted the zoning plan of the Village would be in danger of a piecemeal destruction. Thereafter, any owner of a substandard parcel might demand the right to build on a substandard portion -of a parcel if he were able to present evidence that the divided portions would produce a larger selling price than the one undivided conforming parcel.
“We don’t believe that it would be equitable for us to impose on the residents of King Street a further overcrowding of the area, with its concomitant addition to the traffic, garbage dis *1098 posai and fire-fighting systems, when the only justification therefor would be to increase the prospects of a greater pecuniary profit to the owner in a sale of the property. ’ ’
The dissenting member of the Board stated: “ The reason for my dissent is that the construction of one additional single family dwelling on this property would not change the character of the neighborhood. Denial of the appeal does create a unique hardship, particularly in view of the many years of ownership under the previous zoning regulation which would not have required an appeal. These two simple factors influence my decision.”
In essence the Board’s decision is based upon the principle of merger of the two parcels into one parcel of five lots in single ownership in 1943, as a result of which petitioners may not now subdivide the single parcel, since the proposed subdivision results in the production of a nonconforming two-family dwelling parcel on Lots 7, 8 and 9 under the 1964 amendment of the zoning ordinance. In other words, the Board reasons that the parcel consisting of Lots 7, 8 and 9, which was made nonconforming by the 1964 amendment, had become merged with adjoining Lots 10 and 11, thereby making one conforming parcel, and that petitioners cannot now enlarge their rights by selling off part of the parcel (Lots 10 and 11) because of resulting nonconformity of the parcel (Lots 7, 8 and 9), since they did not have title to said contiguous parcels in single and separate ownership at the time of the adoption of the 1964 amendment, and were therefore not entitled to the area exception provided in section 2-4.4 of the ordinance for lots in single and separate ownership rendered substandard in area by the upgrading of two-family dwelling lots to a minimum of 10,000 square feet. The Board relies upon a line of decisions which includes Matter of Fina Homes v. Young (14 Misc 2d 576, affd. 7 A D 2d 864, affd. 7 N Y 2d 845); Matter of Chasanoff v. Silberstein (6 A D 2d 872, affd. 6 N Y 2d 807) and Matter of Faranda v. Schoepflin (21 A D 2d 801).
The foregoing decisions antedate the decision of the Court of Appeals in Matter of Fulling v. Palumbo (21 N Y 2d 30), which has wrought 11 profound yet subtle changes * * * in the law of zoning ” (Junar Constr. Co. v. Town Bd. of Town of Hempstead, 57 Misc 2d 727, 728) and, in our opinion are not controlling in the case at bar. Under Fulling, 11 the showing by a property owner that he will suffer ‘ significant economic injury ’ (21 N Y 2d 33) or 1 severe financial loss ’ (21 N Y 2d 34) by the application of an area standard ordinance is * * * ‘ sufficient to entitle him to relief ’ (21 N Y 2d 34), unless the *1099 municipality comes forward with proof that the standard is justified because ‘ the public health, safety and welfare will be served by upholding the application of the standard ’ (21 N Y 2d 33) and it is not until such a showing has been made that the property 'owner ‘ must demonstrate that the hardship caused [by application] * * * amounts to a taking of his property ’ (21 N Y 2d 35).” (Junar, 57 Misc 2d, at p. 728.)
As Mr. Justice Meyer said in Junar (57 Misc 2d, at p. 728): “ evidence of such injury or loss shifts to the municipality the burden of going forward with proof that the area restriction bears reasonable relation to health, welfare or safety and, absent such proof, the property owner is entitled to judgment without regard to whether application of the ordinance to the particular property is confiscatory. ’ ’
In the case at bar there is no proof to sustain the Board’s finding that if the variance were granted, a “ seventh family ” would be permitted to occupy an area which, under the existing ordinance, would be limited to “ four families ”, In fact, only one additional single-family dwelling could be legally constructed on the Parcel-lots 10 and 11. Nor is there evidence in this record to sustain the Board’s finding that the two parcels (Lots 7-8-9 and Lots 10-11) have been used since 1943 as one parcel by the tenants on Lots 7-8-9, or by the petitioners. The evidence does not sustain the Board’s findings that an additional single-family residence will produce ‘1 further overcrowding of the area ” or add “ to the traffic, garbage disposal and fire-fighting systems; ” nor does the evidence show that the requested variance or subdivision will change significantly the existing character of the neighborhood which now contains numerous nonconforming two-family dwellings on substandard lots.
On the other hand, petitioners established at the hearings, through expert testimony, that the difference between the value of Lots 10 and 11 as a separate buildable parcel and their value as an adjunct to Lots 7, 8 and 9 was $5,000; that is, the value of Lots 10 and 11 sold separately was $7,500, but only $2,500 if sold as an adjunct to Lots 7, 8 and 9. Thus the value of lots 10 and 11 a's a buildable separate parcel is reduced by 66%% by application of the “merger” restrictions of the zoning ordinance, which in our opinion is clearly both a significant economic injury and a severe financial loss.
Against that showing, the Board has not proved that the public health, safety and welfare or some legitimate public interest will be served in any way by application of the restriction of the amended ordinance of 1964 to Lots 7, 8 and 9. It has not adduced evidence that the variance would in any material way *1100 change the character of the neighborhood or impose undue burdens on the village’s community services or utility facilities.
We find and determine that the Board’s determination imposes an unreasonable burden upon petitioners’ Parcel-lots 7, 8 and 9 and a significant economic injury and severe financial loss to petitioners with respect to the Parcel-lots 10 and 11, and that the application of the amended ordinance of 1964 to these two parcels was unreasonable and confiscatory. Accordingly, the. Board’s determination is reversed and annulled, and the Board is directed 'to grant the application for variance as requested by petitioners.